## WALL v. WILLIAMSON.

1. A marriage between two Indians, belonging to the Choctaw tribe, entered into according to the laws and customs of that tribe, at a place where such laws and customs were in force, is recognized as a valid marriage, by the laws of Alabama, the laws of Alabama having been extended over the territory where the parties so married resided. An exception to the general rule, that a valid marriage is so every where, is said to obtain with respect to incestuous or polygamous marriages, when asserted in the Courts of a Christian State; but however this may be, it cannot obtain with respect to the wife of a Choctaw Indian, unless it is shown there was a previous marriage.

2. The laws and customs of the Choctaws were not abrogated, so far as members of the tribe were affected, by the extension of the jurisdiction of the State over the country occupied by them. It is only by positive enactments, even in the case of conquered or subdued nations, that their laws are changed by the conqueror, but there is no merger, until one tribe or nation is swallowed up, or lost in another, by the efflux of time.

3. When, by the laws of an Indian tribe, the husband takes no part of his wife's property, it is a necessary consequence, that the wife retains the capacity to contract, and it is likely, means were provided by their laws for the enforcement. But if such was the case, it is not perceived how the wife could, in our Courts of law, be sued alone, so long as the marriage continued, as the case presented would be that of a wife with a separate estate.

4. When, by the law of an Indian tribe, the husband has the capacity to dissolve the marriage at pleasure, and his abandonment of his wife, he remaining within the jurisdiction of his tribe, is evidence that he has done so, the effect of this dissolution of the marriage is the same as if directed by a lawful decree.

Writ of error to the Circuit Court of Sumter.

Assumpsit, by Williamson, against the defendant, as the maker of a promissory note. At the trial, upon the general issue, the defendant produced evidence tending to prove, that she and one David Wall lived together, as man and wife, from the year 1831 until the year 1839, in the territory belonging to the Choctaw Indians, until that was annexed to, and made the county of

Wall v. Williamson.

Sumter; after which they lived in the same relation, in that county, near the same place where they previously had resided, and until the said David left the State of Alabama, in 1839, and went to the Choctaw country, west of the Mississippi. Both were of Indian extraction, and of the Choctaw tribe; that they were regarded as man and wife by the tribe, and as having been properly married, according to the laws and customs of the Choctaws. The defendant had said, that she had been advised that she had not been legally married; that she had been married in the Choctaw territory, by one Pistole, a justice of the peace from Marengo county. It was also in proof, that by the laws and customs of the Choctaws, the husband, by his marriage, takes no part of his wife's property; that among them, a man takes a wife at pleasure, and dissolves the marriage whenever he pleases, and that the men are allowed a plurality of wives.

Upon this state of proof, the defendant requested the Court to instruct the jury, that a marriage under the laws and customs of the Choctaws, entered into in a place where such laws and customs are in force, is recognized as a valid marriage by the laws of Alabama, when the same are extended over the territory where the parties so married reside.

This was refused, and the Court charged the jury—1. That the living together of an Indian man and woman would not be regarded by the laws of this State, as such a marriage as would affect a contract entered into by the female. 2. That if the defendant was abandoned by Wall, and she executed the note after he had left her, that she would be bound by her contract, although she might have been married. 3. That if, according to the customs among the Choctaws, the parties to a marriage can dissolve it at pleasure, by mere separation, and that the defendant and Wall did so separate, then the defendant was liable on her contract, as a *feme sole.*

The defendant excepted to the refusal of the Court to give the charge requested, as well as to those given, and error is assigned upon the bill of exceptions.

HAIR, for the plaintiff in error.

SMITH, contra.

GOLDTHWAITE, J.—Previous to entering upon the consideration of the questions raised, by the refusal to give the

charge requested by the defendant, it is not improper to ascertain what facts had to be ascertained by the jury, from the evidence. The existence of a marriage between David Wall and the defendant, at the time when the note sued on was given by Mrs. Wall, was one of the principal matters to be passed upon. Once established, to the satisfaction of the jury, as having been entered into, in conformity with the usages of the Choctaw tribe of Indians, its effect, in connection with the laws of this State, became a very material subject of inquiry. The defendant insisted then, and now, that if this marriage was valid, by the laws and usages of the Choctaw tribe of Indians, it is recognized as valid by the laws of Alabama. The *validity* of the marriage, and not the consequences of it, as to the defendant, was, at that time, the subject for instruction. If the marriage is not to be recognized as valid by our law, it was of no consequence to the defendant, what further charge was given, for or against her, because her entire defence rested on sustaining that proposition. All the testimony in relation to rights of husband and wife, under the Choctaw law, may have been of a disputable or doubtful nature. These observations are called for, because it has been assumed that this charge was immaterial, and that all the case is covered, by the charge actually given by the Court.

1. With respect to the refusal of this charge, it is not unlikely that the Circuit Court intended to be understood, by the counsel, that the charge was refused, not as an incorrect proposition, but for the reason that the case was clear for the plaintiff, even if it was conceded. If such was the impression of the Court, the charge should have been given, with the necessary explanation to direct the jury to the consideration of those points deemed to be more material. The general rule upon this subject is, that a marriage, valid at the place where contracted, is deemed to be valid every where else. [Story Confl. of Laws, 77, §§ 79, 103, 113, a.] It is said by the same author, that the most prominent, if not the only exceptions to this rule, are those marriages, involving polygamy and incest. [Ib. §113, a, 114.]

These, the learned author says, Christianity is understood to prohibit, and therefore no Christian country would recognize polygamous, or incestuous marriages. Lord Brougham, in Warrender v. Warrender, (cited in a note to § 114, 9 Bligh. 112,) says, "it is important to observe, that we regard it, (mar-

Wall v. Williamson.

riage,) as a wholly different thing, a different *status*, from Turkish or other marriages among infidel nations; because we clearly never should recognize the plurality of wives, and consequent validity of second marriages, standing the first, which second marriages, the laws of those countries authorize and validate." If this doctrine is to be understood as leading to the conclusion, that a Court can collaterally inquire into the existence of such a relationship, as would, in a direct proceeding, annul the marriage, it is very questionable whether it is sustainable. [1 Black. Com, 434.] A parallel case, to a Turkish, or other marriage in an infidel country, will probably be found among all our savage tribes, but can it be possible, that the children must be illegitimate, if born of the second or other succeeding wife? However the true rule may be, it is immaterial to this case, unless it can be shown, that when the law tolerates polygamy, there can be neither lawful wife or legitimate children, for here, the evidence does not disclose any previous marriage.

The validity of the marriage may possibly have been denied upon the impression, that having been contracted within the territorial limits of the State, it cannot be affected by Choctaw usages or customs, though both parties were of that tribe, and resident within its bounds.

2. The refusal cannot be sustained on this ground. Waiving the consideration of the peculiar relation which these Indian tribes bear to the States, within the limits of which they were resident, and assuming that the individuals composing the tribes could, by the States, have been made subject to their general laws, the question yet remains, whether, at the time of this supposed marriage, the laws and usages of the Choctaw tribe had been abolished or superseded; or, whether they composed a distinct community, governed by their own chiefs and laws. It is not pretended, that any statute producing this effect was then passed, and therefore, if lost at all, their local laws must have been lost, in consequence of their living within the territorial limits of the States. It may be difficult to ascertain the precise period of time when one nation, or tribe, is swallowed up by another, or ceases to exist; but until then, there can not be said to be a merger. It is only by positive enactments, even in the case of conquered and subdued nations, that their laws are changed by the conqueror. The mere acquisition, whether by treaty or

war, produces no such effect. It may therefore be considered, that the usages and customs of the Choctaw tribe continued as their law, and governed their people, at the time when this marriage was had. The consequence is, that if valid by those customs, it is so recognized by our law.

For that error, in refusing thus to charge, the judgment must be reversed, and the cause remanded.

3. But although this result is arrived at, it yet remains necessary to ascertain what further instructions ought to have been, or should be given. The evidence tended to show, that by the Choctaw law, the husband takes no part of the wife's property. A necessary consequence of this peculiarity is, that the wife must have the capacity to contract, for otherwise she would be incapable, in many instances, to preserve or protect her property. The bill of exceptions is silent as to any positive law among them, as to this point, but the inference is direct and immediate, from what was proved. Having, by their law, the capacity to contract, it is also likely that means were provided by it, for its enforcement; but if that was the case, we do not see how she could be sued, in a Court of law, so long as the marriage continued. It would present nothing, but the case of a wife with a separate estate to her own use. It may be possible, that the objection to the form of action could not be urged at the trial, but it is unnecessary to consider this point further, because we are clear, that the marriage was dissolved according to Choctaw usages, by the abandonment of the husband.

4. Whatever may have been the capacity of the husband to abandon his wife, and thereby to dissolve the marriage, if both had become residents of Alabama, after the tribe had departed from its limits, it is very clear that the same effect must be given to a dissolution of the marriage, by the Choctaw law, as given to the marriage by the same law. By that law, it appears the husband may at pleasure dissolve the relation. His abandonment is evidence that he has done so. We conceive the same effect must be given to this act, as would be given to a lawful decree in a civilized community, dissolving the marriage. However strange it may appear, at this day, that a marriage may thus easily be dissolved, the Choctaws are scarcely worse than the Romans, who permitted a husband to dismiss his wife for the most frivolous causes. [Story Confl. of Laws, 169.]

The jury then, should have been instructed, that notwithstanding the marriage, if contracted according to Choctaw usage, between members of the tribe, in their own territory, before their laws were abrogated, was valid, yet the wife had the capacity to contract, and in case of a valid contract, was liable to be sued as a *feme sole*, if the marriage could, by the Choctaw law, be dissolved by the husband, at his pleasure, and was so dissolved, which might be inferred, if the husband abandoned his wife, and went with his tribe beyond the Mississippi, or elsewhere.

Judgment reversed and remanded.

[NOTE.—This cause was decided at June Term, 1844, and should have been published in the 6th or 7th volume of Reports.]