Harold A. Felix, J.
The instant proceeding* was instituted upon the petitioner’s filing a petition for support against her alleged husband, the respondent. There are no children of this marriage. The respondent claims that he is not the petitioner’s husband, inasmuch as a valid decree was issued on August 25, 1973 in Egypt, and therefore pursuant to section 412 of the Family Court Act he is not liable for .the petitioner’s support: “ § 412. Husband’s duty to support wife. A husband is chargeable with the support of his wife and, if possessed of sufficient means or able to earn such means, .may be required to pay for her support a fair and reasonable sum, as the court may determine, having due regard to the circumstances of the respective parties. ’ ’
The petitioner and the respondent are Egyptian nationals, followers of the Islamic faith. They both were born in Egypt, lived there and were married in that country on July 8, 1971. The marriage contract made provision for the petitioner’s support in the event of divorce seemingly in conformity with the customs of that country. In 1971 they both arrived in the United States and on August 14, 1973 they traveled together back to Egypt where the respondent on August 25, 1973 obtained a divorce in conformity with Egyptian law, which incorporated the .support provisions of the marriage contract.
The -petitioner does not contend that the said divorce is not in compliance with all the laws, and regulations of the government of Egypt. The petitioner concedes that the said divorce is recognized -within Egypt. The issue thus is whether as a matter of “ comity ” this State .will recognize the said divorce.[1]
It is a firmly established principle of Anglo-American law that foreign judgments, subject to a few exceptions, are not open to re-examination on the merits before a local forum. If the said divorce decree were of a sister State the full faith *907 and credit provision of the Constitution would be applicable but inasmuch as this divorce decree is of a foreign country ‘ ‘ the comity of nations ’ ’ doctrine applies. 1 ‘ Comity ’ ’ has been described as “ neither a, matter of absolute obligation, on the one hand, nor of mere courtesy and good will, upon the other * * * it is * * * the legislative, executive or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens or of other persons who are under the protection of its laws.” (Hilton v. Guyot, 159 U. S. 113,163-164.)
The Egyptian laws with regard to matrimony do not by any means meet with the approval of this court. However, the court’s approval or benediction of this divorce is not necessary to validate it and the facts of this case do not make it offensive to the public policy of this State to accord it recognition. Although this State, itself, provides for divorces through a judiciary process, it has on prior occasions recognized divorces obtained through other channels.[2]
Even marriages among American Indians according to their laws and customs have been recognized, though both polygamy and termination by mutual consent are permitted.[3] In Wall v. Williamson (8 Ala. 48 [1844]), quoted by a New York court in Miller v. Miller (70 Misc. 368) the court stated: “ it is very clear that the same effect must be given to a dissolution of the marriage, by the Choctaw law, as given to the marriage by the same law. By that law, it appears the husband may at pleasure dissolve the relation * * * We conceive the same effect must be given to this act, as would be given to a lawful decree in a civilized community, dissolving the marriage. However strange it may appear, at this day, that a marriage may thus easily be dissolved, the Choctaws are scarcely worse than the Romans, who permitted a husband to dismiss his wife for the most frivolous causes.” (8 Ala. 48, 52.)
A basic principle underlying the conflicts of law area is that the foreign forum in rendering a judgment between a native and a foreigner accorded fair and equal treatment to both parties before it. In other words the foreigner should be accorded the .same treatment as the native. In the instant case, the respondent and the petitioner are both Egyptian nationals and no allegation has ever been raised that they were not accorded the same treatment as other Egyptians wherein *908 the Egyptian-Islamic husband had instituted the divorce proceedings. Thus, this is not a case where there has been less than “ an impartial administration of justice between the citizens of [Egypt] ,and those of other countries.” (Hilton v. Guyot, 159 U. S. 113, 202.)
The case at bar does not involve a “mail order” divorce issued by a country having no relationship to the parties’ marital status. The divorce was rather granted by a country wherein the parties were domiciled [4] at all crucial points in their marital history. It is not shocking to “ the conscience to conclude that people who marry under a certain set of laws may expect to be bound only so long as that set of laws .required it.” (Oettgen v. Oettgen, 196 Misc. 937, 941.)
Respondent’s motion to dismiss is granted, the court concluding that the respondent is not the petitioner’s husband within the meaning of section 412 of the Family Court Act. By its action the court is not passing on the applicability of subdivision (c) of section 466 of the Family Court Act.

. The fragmented jurisdiction of marital disputes bars any decision of the marital status between the parties by this court being regarded as res judicata, although for support purposes the court must determine whether the parties are husband and wife. (Loomis v. Loomis, 288 N. Y. 222; Matter of Case v. Case, 54 Misc 2d 20.)

. In Sorensen v. Sorensen (122 Misc. 196, affd. 219 App. Div. 344) this State recognized a divorce granted by a Danish King.

. See People ex rel. La Forte v. Rubin (98 N. Y. S. 787).

. Note Gould v. Gould (235 N. Y. 14), recognition of French divorce though both parties were domiciled in New York.