OPINION OF THE COURT
Gerard E. Maney, J.
The petitioner (Mother) objects to the Hearing Examiner’s findings of fact and order which enforced the Mother’s Egyptian divorce under the doctrine of comity and dismissed the Mother’s petition for child support arrears.
The Mother and respondent (Father) are both Egyptian nationals ánd were married in Egypt on August 22, 1985, and have one daughter born in January 1987. The parties were divorced on July 11, 1987, in a court of competent jurisdiction. Pursuant to the divorce decree, the Father agreed to pay £E 350 monthly in addition to school, treatment and custody expenses for the daughter. The Father paid this amount for the month of June 1987 only. Thereafter, he fled to the United States, without giving notice to the Mother and has not paid his Egyptian child support obligation since. The Mother obtained a judgment for support in June 1993, in the appropriate Egyptian court, for a sum of £E 100 to be paid monthly, from November 8,1987 to the present. Both Mother and Father appealed this decision and the Egyptian appellate court on May 26,1994, sustained the initial judgment of £E 100 monthly for child support. The court issued the judgment upon the Father’s salary in Egypt and stated that the amount of support could not be increased until his affluence and change in financial status was proven with American financial statements. The Mother has no way of obtaining the necessary proof in Egypt because the Father is not in Egypt and refuses to give her the appropriate documentation. The Father appealed the judgment of £E 100 monthly, and the court held that the amount was appropriate to the Father’s financial status in *528 Egypt and that the father owed a nondelegable duty of support to his daughter under Egyptian civil and religious law. The Father was held in contempt for his failure to pay child support in 1995 when he returned to Egypt. The Father would be held in contempt again, should he return to Egypt, for his willful failure to support his child. His support obligation, based on the current value of the Egyptian £E, equals around $29.41 monthly. Thus, his total arrears resulting from the Egyptian judgment is $13,763.88 to date.
The Mother entered the United States on a student visa and filed a petition for support on April 16, 1996, in Albany County Family Court. The Mother resided in Towson, Maryland, until the middle of May 1996, when the visa expired and she returned to Egypt with her daughter. The Mother currently resides in Alexandria, Egypt. The Mother appeared in person on May 2, 1996, for a hearing in Albany County Family Court. The Father resides in Albany, New York, and appeared personally at the same hearing. Thus, the court has personal jurisdiction over both parties.
A hearing on the support petition was held on May 2, 1996, and on September 9, 1996, the Hearing Examiner found in her conclusions of law that although the Egyptian order was not subject to the registration of foreign support orders provisions of Domestic Relations Law § 37-a, the court would recognize the Egyptian order under the doctrine of comity. The Hearing Examiner further held that the petition filed by the Mother would be treated as both an enforcement and a request for modification of the valid Egyptian order of support. Finally, the Hearing Examiner stated that the Mother had the burden of indicating the amount of support due and owed, if any, by the Father and requested that the Mother file an affidavit in accordance with section 451 of the Family Court Act by October 1, 1996, in order to support a prima facie finding of a change in circumstances sufficient to warrant a modification of the Egyptian judgment. Counsel noted, in correspondence, that the Mother would be returning to Egypt in the middle of May. The Hearing Examiner issued an order on September 9, 1996, notifying the Mother that she needed to appear on October 1, 1996, with an affidavit showing the amount of arrears due. The Mother did not appear on October 1, 1996, and the Hearing Examiner dismissed her case on October 18, 1996, for lack of compliance because no extension or adjournment was requested on behalf of the Mother and the affidavit determining the *529 specific amount of arrears due was not filed (Matter of Cox v Cox, 181 AD2d 201). The Mother’s objections were timely as was service of process. The Father provided a rebuttal on November 13,1996, and, although not timely for the September 9th order and findings of fact, it was timely for the October 18th dismissal of the Mother’s petition. However, only the rebuttal to the dismissal is timely and the Father’s arguments on why he left Egypt and how the doctrine of comity applies are untimely as the rebuttal was filed three weeks later than the date required under Family Court Act § 439 (e).
The Mother filed a set of objections with service of process on November 15, 1996, to the order of the Hearing Examiner entered on October 18, 1996. The Mother objected to the dismissal of her complaint and stated that the failure to provide a Family Court Act § 451 affidavit when the Hearing Examiner was on notice that the Mother had returned to Egypt was an unreasonable request and abuse of discretion. The Father filed a rebuttal on November 15, 1996, with service of process and claimed that since the Mother had realleged each and every objection submitted to the court on October 9,1996, the Mother has opened the door to rebut those objections and, therefore, the previous request deemed untimely is now resubmitted and should be deemed timely. The Father states that the dismissal of the Mother’s petition was proper and consistent with Family Court Act § 451. The court will consider the Father’s argument that the court had the power and authority to construe the Mother’s petition as one for enforcement and modification. Furthermore, the Father correctly states that, with a foreign support order in hand, the Mother may come to a New York court and bring an action for enforcement or modification of the foreign support order.
The first issue presented in the Mother’s objections is whether the doctrine of comity requires Albany County Family Court to recognize the Egyptian judgment and give it full faith and credit. The doctrine of comity is the "legislative, executive or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens or of other persons who are under the protection of its laws” (Hilton v Guyot, 159 US 113, 164). Comity is neither an absolute obligation on behalf of a country nor a mere courtesy and good will upon the other (supra). The Court of Appeals held New York will not disregard a facially valid and regular divorce decree of a foreign country, under the principle of comity, unless there is some evidentiary basis that the *530 divorce decree of the foreign country was the product of fraud, coercion, duress, oppression or was fundamentally offensive and "inimical” to the public policy of the state (Matter of Gotlib v Ratsutsky, 83 NY2d 696; Feinberg v Feinberg, 40 NY2d 124).
In Aranoff v Aranoff (226 AD2d 657), the Appellate Division, Second Department, held that a trial court was not required to recognize an Israeli divorce decree when there was no evidence that the foreign court had personal jurisdiction over both parties and, regardless, the trial court retained jurisdiction over issues of child support, even if the Israeli divorce decree was recognized. The Court relied on Greschler v Greschler (51 NY2d 368, 376) and stated that it was well settled that, " '[although not required to do so, the courts of this State generally will accord recognition to the judgments rendered in a foreign country under the doctrine of comity which is the equivalent of full faith and credit given by the courts to judgments of our sister States’ ”, and that, in order for a divorce decree of a foreign court to be recognized in New York State, the foreign court must have had in personam jurisdiction over both spouses (Aranoff v Aranoff, supra, at 658). Furthermore, the Court held that New York courts would retain jurisdiction over subsidiary issues such as child support (see, Bennett v Bennett, 103 AD2d 816; Aranoff v Aranoff, supra).
The New York County Family Court held that, as a matter of comity, the court would recognize and give effect to an Egyptian divorce where both the husband and wife were Egyptian nationals (Matter of Sherif v Sherif 76 Misc 2d 905). In this case, both the Mother and Father were Egyptian nationals, were married in 1985 in Egypt in conformity with the customs of that country and the Islamic faith, and were divorced in Egypt. Both the Mother and the Father personally appeared in Egypt at both the lower court and the appellate review level. Thus, under the doctrine of comity, the Mother’s Egyptian divorce will be enforced.
Despite the doctrine of comity, the Mother’s valid judgment would be enforced if she were to bring an Egyptian judgment stating the full amount of arrears the Father owes to an American court. The American court would recognize the foreign judgment and enforce the arrears where the Father is domiciled. Thus, even if the doctrine of comity was not addressed, the Mother would still have a remedy as to arrears. Without a judgment stating the full amount of arrears, this court is powerless to enforce the Egyptian judgment here.
*531 Once a monetary judgment is brought to the United States, the Mother has an option of filing a petition for a modification of child support under the Uniform Support of Dependents Law (USDL) (Domestic Relations Law § 32) or under article 4 of the Family Court Act (Family Ct Act § 413). The purpose of the USDL is to provide an interstate reciprocal procedure to facilitate the enforcement of a support order. Under the USDL, the initiating State is usually where the petitioner or the child resides and the responding State is the one in which the Father resides (Domestic Relations Law § 34 [1]). The support obligations will be determined solely in accord with the substantive law of the responding State. This could have a different result from that which the other parent desires. Under the USDL, the judgment is entitled to full faith and credit. However, a foreign judgment will not be enforced under the USDL unless the initiating and responding State have reciprocal laws and similar procedures (Landes v Landes, 1 NY2d 358, 363). Therefore, recognition under the USDL would be at the court’s discretion and its willingness to enforce the judgment under the doctrine of comity. Furthermore, a foreign judgment cannot be enforced under Domestic Relations Law § 37-a (registration of foreign support orders) without the reciprocity of both the initiating and responding State. Egypt does not enjoy reciprocity with New York State or the United States nor does it have substantially similar reciprocal laws (Matter of Strobl v Sawicki, 41 Misc 2d 923). Therefore, the Mother will not be able to bring a petition under the USDL to enforce her Egyptian judgment.
The Mother may bring a petition under article 4 of the Family Court Act. Any parent or guardian or other person acting in loco parentis may originate a proceeding for child support (Family Ct Act § 422). There is no requirement that the parent be a resident of or personally be present in the State of New York (Family Ct Act § 422). The noncustodial parent has a moral obligation to support his child (Family Ct Act § 413) until the age of 21 and this duty does not change if the child lives in a foreign country. The venue to bring a support proceeding is the county in which one of the parties is residing or is domiciled at the time of the filing of the petition for support (Matter of Strobl v Sawicki, supra; Family Ct Act § 421). Thus, article four of the Family Court Act offers the Mother more options, including the possibility of modifying a prior award.
Under traditional conflicts of law analysis, to determine the appropriate loss distribution and possibility of recovery, the *532 New York Court of Appeals held in Neumeier v Kuehner (31 NY2d 121) that the foreign statute would be applied in a New York action where the foreign domiciliary was injured by a New York resident in the foreign country. There are three steps in the Neumeier analysis: (1) determining where the parties reside, (2) determining where the injury occurred, and (3) determining which law should be applied. In the first step, in this case, one of the parties lives in New York and the other in Egypt. However, the parties were married and divorced in Egypt. Based on the second step, the injury in this case occurred in Egypt where the Mother did not receive child support. The third step in the Neumeier analysis requires the court to determine which conflict setting applies to the facts of the case. New York has a State interest in children and ensuring that they receive the proper support from parents unwilling to pay their statutory obligation. Thus, New York has a public policy interest to ensure that the Father, domiciled in New York, pays his prior foreign support obligation and does not make the child become a public charge. The second question addressed is whether or not the State has an interest in displacing the foreign law. The Egyptian court has rendered a decision obligating the Father to pay child support and, although unenforceable because the Father will not return to Egypt, the New York court does not have an interest in displacing the Egyptian law. On appeal, the Egyptian court stated that the Father has an obligation from the Koran and Egyptian civil law to support his child "appropriate to the Father’s financial state” (Alexandria Court of First Instance for Personal Status, May 26, 1994) and that obligation does not disappear simply because the Father does. New York also imposes an obligation on the parents to provide support for their child based on the combined income of both parents. If New York law were to apply, the Father would be responsible for 17% percent of the combined parental income to support one child.
Neumeier (1) states that where both the Mother and Father are domiciled in the same State, that State’s law will control (Neumeier v Kuehner, supra, at 128). At the time of the Egyptian judgment, both the Mother and Father were domiciled in Egypt, divorced in Egypt, and appealed their judgment in Egypt. Thus, it would appear that Neumeier (1) might apply.
Since the Father is now domiciled in New York and the Mother domiciled in Egypt, Neumeier (2) is a case-by-case decision and states that, if the law of the State in which the accident takes place helps out its citizen, then that State’s law *533 will apply (Neumeier v Kuehner, supra). Although the Mother and Father are domiciled in different places, the foreign judgment took place in Egypt but did not help the Father out because he was still required to pay his support obligation, even though the sum was reduced. Therefore, Neumeier (2) would not apply.
The final question is what to do if there is a split domicile and no law covering the situation. In that case, the court would apply the law of that State where the accident or injury occurred unless it could be shown that displacing the forum’s rule would advance the substantive law purposes of the other State without impairing the efficiency of the multi-State system or producing uncertainty for the litigants. Thus, Egyptian law would apply because the divorce and resulting judgment took place in Egypt and applying New York law would not advance the substantive nature of the Egyptian law, stating that the Father did have an obligation to support his daughter. In light of these considerations, Neumeier (3) would apply best to this case since the Father is now domiciled in New York but the injury occurred in Egypt (Neumeier v Kuehner, supra). Therefore, Egyptian law would be the dominant law under this conflicts of laws analysis. However, as Egyptian law and New York both require the noncustodial parent to support the child based on his/her standard of living, then it would be permissible and logical to apply New York law due to the similarities in the laws.
In this case, the Mother does not have another forum to address her claim. The courts in Egypt have told the Mother that it cannot enforce a judgment against the father unless he returns to Egypt because it cannot be proved that he has increased his standard of living without financial information from his place of employment in the United States. Furthermore, the Mother has appealed her case to the highest court in Egypt and been denied a remedy for that reason.
In a modification petition, the court will consider the increased needs of the child due to special circumstances or to the additional activities of a growing child, the increased cost of living resulting in greater expense for the child, a loss of income or assets by a parent or substantial improvement in the financial condition of a parent, and the current and prior lifestyles of the child (Matter of Brescia v Fitts, 56 NY2d 132). In this case, the amount of child support has not been adjusted in nine years and does not accurately reflect the needs of a growing child. Furthermore, the Father has substantially *534 increased his standard of living and would be able to meet the increased needs of his growing daughter. Therefore, the Family Court should look at the issue of child support and modify the judgment accordingly.
Hence, the Mother’s objections to the recognition of her Egyptian divorce under the doctrine of comity are denied and the Mother may return to this court with a money judgment from Egypt, stating the full amount of arrears owed by the Father, so that this court may enforce her judgment.
Based on the foregoing, the orders of the Hearing Examiner entered on September 9, 1996 and October 18, 1996 are reversed regarding the dismissal and the Mother’s objections to the final order are denied in part and remanded to the Hearing Examiner for determination of child support consistent with this decision.