DECISION AND JUDGMENT ENTRY
This is an appeal from the judgment of the Lucas County Court of Common Pleas, Domestic Relations Division, which determined that the court had jurisdiction over the matter, divided the parties' marital assets and liabilities, and ordered appellant to pay spousal support and a portion of appellee's attorney fees. Appellant raises the following seven assignments of error:
 "A. The trial court erred, as a matter of law, when it determined that it had jurisdiction to award an equitable distribution of property and spousal support to Appellee despite the fact that a divorce was obtained in Jordan, prior to filing for divorce in Ohio, and the parties had previously entered into a contract delegating their rights and responsibilities upon divorce. Magistrate's Decision with Permanent Order filed September 22, 1999 (See Appendix A); Objection to Magistrate's Decision filed October 5, 1999 (See Appendix B); Amended Objections filed December 1, 1999 (See Appendix C); Judgment Entry on Objections to Magistrate's Decision (See Appendix D); Decision of the Court filed October 3, 2000 (See Appendix E); and Judgment Entry of Divorce filed November 13, 2000 (See Appendix F).
 "B. The trial court erred when it found that the property located on Angola Road and the Shaftsbury Lane Apartments were marital property subject to distribution. Decision of the Court filed October 3, 2000 (See appendix E); and Judgment Entry of Divorce filed November 13, 2000 (See Appendix F).
 "C. The trial court erred when it improperly valued the property located on Angola Road and the Shaftsbury Lane Apartments. Decision of the Court filed October 3, 2000 (See Appendix E); and Judgment Entry of Divorce filed November 13 2000 (See Appendix F).
 "D. The trial court erred when it found that Appellee's student loan and chiropractor bills were marital property subject to distribution. Decision of the Court filed October 3, 2000 (See Appendix E); Judgment Entry of Divorce filed November 13, 2000 (See Appendix F).
 "E. The trial court erred when it failed to impute income to Appellee when considering an award of spousal support. Decision of the Court filed October 3, 2000 (See Appendix E); and Judgment Entry of Divorce filed November 13, 2000 (See Appendix F).
 "F. The trial court erred when it granted spousal support given the factors involved in this case. Decision of the Court filed October 3, 2000 (See Appendix E); and Judgment Entry of Divorce filed November 13, 2000 (See Appendix F).
 "G. The trial court erred in awarding attorney's fees to Appellee given the factors involved in this case. Decision of the Court filed October 3, 2000 (See Appendix E); and Judgment Entry of Divorce filed November 13, 2000 (See Appendix F)."
The facts of this case are as follows. Appellant, Basman Ahmad, and appellee, Amal Ahmad, were married on January 2, 1991, in Sweileh, Jordan, where they are natural-born citizens. The parties signed a marriage contract with an antenuptial agreement or "sadaq." No children were born during the marriage. At the time of the marriage, appellant was a legal resident of the United States and he brought appellee back to Ohio where they lived for the duration of their marriage.
On November 27, 1998, the parties traveled to Jordan as they did periodically. Appellant filed for a divorce on December 2, 1998. On December 3, appellee left Jordan and returned to the United States. Appellant was granted the divorce on December 6, 1998. He remarried, in Jordan, on December 20, 1998.
On December 14, 1998, appellee filed a complaint for divorce in Lucas County. Appellant filed his answer on March 10, 1999, and claimed that the trial court lacked subject matter jurisdiction due to the Jordanian divorce decree.
Appellant was ordered, on April 6, 1999, to pay temporary spousal support in the amount of $1,400 per month. The amount was reduced by stipulation of the parties to $900 per month.
On May 10, 1999, appellant filed a motion to dismiss the complaint arguing that the trial court was required to recognize the Jordanian divorce decree, based on the principle of comity, because there were sufficient contacts between the parties and Jordan. Appellee's opposition to the motion urged the trial court to reject the Jordanian divorce, because the parties were domiciled in Ohio for the duration of their marriage. Appellee further argued that she did not receive proper notice of the December 6, 1998 divorce and, thus, was denied due process of law. A hearing was held on July 30, 1999, and the motion was denied on September 24, 1999. Objections were filed.
On December 28, 1999, the trial court entered its judgment entry on objections to the magistrate's decision. The court affirmed the magistrate's decision and further stated that to the extent that the Jordanian divorce decree severed the marital relationship of the parties it was valid. As to the division of marital property and spousal support, the court noted that the decree was silent as to such matters and, based on the fact that the divorce was procured without proper notice, giving it effect beyond the actual termination of the marriage would violate the public policy of the state of Ohio. Also relevant to the court's decision to recognize the divorce was the fact that appellant was remarried.
On June 12, 2000, the case proceeded to trial on the division of marital property and debt, spousal support and attorney fees. The jurisdictional issue was again raised.During the July 30, 1999 and June 12, 2000 proceedings, the following relevant evidence was presented. At the time of the proceedings, appellant was thirty-nine and forty years old. Appellant was born in Rucita, Jordan, and lived there for twenty-five years. In Jordan, he received an associate's degree and decided to come to the United States in order to continue his education.
Appellant arrived in the United States on December 28, 1984, with a student visa. He earned a bachelor's degree in civil engineering, received his professional engineering degree, and was awarded a master's degree in civil engineering. At the time of the June 2000 trial, appellant was in the doctorate program and he had been employed for approximately eleven years with the Ohio Department of Transportation ("ODOT"). Appellant had been a United States citizen since 1992.
In 1987, appellant married a United States citizen and established residency in order to obtain a work permit. His wife subsequently filed for a divorce; appellant did not contest or enter an appearance in that action.
Appellant first met appellee in 1990 in Jordan. They were introduced through Basman's cousin. After meeting with each other's families they decided to marry. Appellant returned to the United States and approximately one year later received a telephone call from appellee that she had received her visit visa and they could be married at any time.
On December 30, 1990, in Sweileh, Jordan, the parties entered into a marriage contract. The contract provided a "sadaq" or division of martial assets upon divorce. The sadaq states that upon divorce, if appellant is faulted, appellant would pay appellee 5,000 Jordanian dinars or approximately $6,600 U.S. dollars. The parties were then married on January 2, 1991 and returned to the United States.
Appellee, at the time of the proceedings, was thirty-three and thirty-four years old. In Jordan, appellee had worked as a cartographer and had an associate's degree. Appellee did not work during the marriage; she was a full time student at the University of Toledo and was expected to graduate with a bachelor's degree in geography in December 2000. Appellee procured student loans in order to attend college.
In November 1991, the property and residence at 3810 Angola Road was purchased for $43,000. The parties lived at this residence for the majority of their marriage. On June 3, 1998, appellant purchased a sixteen-unit apartment complex known as Shaftsbury Lane Apartments. The purchase price was $264,000.
The parties dispute whether the above properties are properly classified as marital or separate and also dispute the value and even ownership of said properties. Additional specific facts as to the nature and value of the properties will be recounted in our discussion of the assignments of error.On October 3, 2000, the trial court issued its final decision. The court first determined that it had jurisdiction to determine the issues of property division and spousal support. The court then addressed the division of the marital property.
As to the Angola residence, the court determined that it was, in fact, martial property and valued it at $75,000. Appellant was awarded the $25,000 equity in the property. As to the Shaftsbury Apartments, the court found the apartments to be owned solely by appellant and marital property. The court valued the apartments at $264,000, and ordered that they be sold and the proceeds applied against the $180,000 mortgage balance. The remaining $84,000 was to be split: $50,000 to appellee and $34,000 to appellant.
The court found that appellee's student loans were marital property and subject to equal division. The court also acknowledged the present value of appellant's Public Employee Retirement System ("PERS") account to be $37,000.
Based on the above distributions and allocations, and other uncontested findings, the trial court determined that appellant owed appellee a lump sum of $20,822. The court further awarded appellee spousal support in the amount of $900 per month for six months, then $500 per month for an additional six months.
As to attorney fees, the court found that appellee had incurred a total of $21,500.30 with $16,900.30 outstanding. Appellant's attorney fees totaled $16,647.50 with an outstanding balance of $15,147.50. The court then ordered that appellant pay $15,000 of the balance of appellee's attorney fees.
Appellee, per court order, filed a judgment entry of divorce on November 13, 2000, setting forth the findings of fact and conclusions of law of the court as well as the stipulations of the parties. It was signed by the court on the same date. Appellant then filed the instant appeal.
 JURISDICTION
In appellant's first assignment of error, he argues that the trial court erroneously determined that it had subject matter jurisdiction over the distribution of marital property and award of spousal support. Appellant bases his argument on the fact that the parties were divorced in Jordan prior to the date appellee filed the complaint for divorce and, further, that the parties had a contract or "sadaq" which controlled the rights and responsibilities of the parties upon divorce.
Conversely, appellee argues that she never received proper notice of the divorce under either Ohio or Jordanian law. Appellee left Jordan on December 3, 1998, and the divorce was granted on December 6, 1998. She further notes that while Jordan may have had jurisdiction over the status of their relationship, i.e., the fact that they were married, it lacked jurisdiction over any issues attendant to the marriage.
In its October 3, 2000 decision, the trial court determined that it had jurisdiction over the matter according to R.C. 3105.03, which requires that in a divorce action the plaintiff must be a resident of the state for at least six months prior to filing, and R.C. 3105.01(I), which states:
 "Procurement of a divorce outside this state, by a husband or wife, by virtue of which the party who procured it is released from the obligations of the marriage, while those obligations remain binding upon the other party."
As additional bases in support of jurisdiction, the court emphasized that the Jordanian court did not have personal jurisdiction over appellee and that the sadaq or antenuptial agreement was unenforceable under Ohio law because at the time the agreement was entered into, appellee was not represented by counsel, there was no disclosure of appellant's assets, and the agreement did not take into consideration the assets subsequently acquired in Ohio during the eight-year marriage.
In support of his arguments, appellant relies primarily on Machranskyv. Machransky (1927), 31 Ohio App. 482; Sherif v. Sherif (1974),76 Misc.2d 905, 352 N.Y.S.2d 781; and State ex rel. Smith v. Smith (May 3, 1995), Cuyahoga App. No. 67806, unreported. These cases are all distinguishable.
In Machransky, the parties were married in Russia, divorced, and following the divorce plaintiff/ex-wife emigrated to the United States. Finding that Russian law applied, the court noted that while the system of divorce may not conform to the "present standards in this country, its validity is to be determined by the laws of the country that at the time had jurisdiction over the parties." Id. at 486.
In the instant case, unlike Machransky, the parties were married in Jordan, left shortly after the marriage, and lived in the United States for the duration of their marriage. Further, appellant became a United States citizen in 1992.
Sherif is factually similar to the present case. The parties, Egyptian nationals, were married in Egypt in 1971 and traveled to the United States. In 1973 they returned to Egypt and were divorced. The court acknowledged that the Egyptian laws did not meet its approval; nevertheless, it recognized the divorce according to the principles of comity. Id. at 907.
Sherif, while sharing similar facts, is distinguishable from the present case in significant ways. In 1987, appellant had established legal residency in the United States. He and appellee lived in the United States for eight years and had strong ties to Ohio. The parties owned property, appellant had worked for ODOT for several years, and appellee was attending school. Further, the Sherif decision does not address property division.
Appellant also cites Smith which involves a South African adoption. InSmith, the mother gave birth to an illegitimate child in South Africa. The father, an Ohio resident, was not informed that the child was to be adopted and he attempted to establish parenthood. The court, finding that the Ohio trial court lacked jurisdiction, recognized the South African law which requires only the consent of the mother for an adoption.
Smith was reversed in State ex rel. Smith v. Smith (1996),75 Ohio St.3d 418. The Supreme Court of Ohio noted that:
 "[I]t is not patent and unambiguous that the South African adoption decree is entitled to comity and the effects specified in R.C. 3107.15(A). Under R.C. 3107.15(A), a foreign adoption decree will not be accorded the status of an Ohio adoption decree if public policy of this state would be violated or the foreign adoption decree was not issued pursuant to due process of law. Therefore, the recognition and effectiveness of a foreign adoption decree are subject to the condition that the decree not be repugnant to the laws of Ohio." (Citation omitted.) Id. at 420.
In the instant case, the trial court, in its decision, found that the Jordanian court did not have jurisdiction over the parties because they were domiciled in Ohio. The court further noted that the divorce was devoid of notice and opportunity to be heard and was, therefore, violative of due process and Ohio public policy. The court also found the antenuptial agreement to be violative of the contract laws of Ohio.
Upon careful review of the facts herein and the relevant case law, we find that the trial court did not abuse its discretion in finding that it had jurisdiction over the issues in this case. The parties were domiciled in the state of Ohio, owned property, worked and attended school in the state of Ohio; thus, Ohio is the proper forum to resolve issues attendant to divorce. Appellant's first assignment of error is not well-taken.
 DIVISION OF MARITAL PROPERTY
Appellant's second, third and fourth assignments of error dispute the trial court's characterization and division of certain real property acquired and debts incurred during the marriage. We shall address each assigned error in the order presented.
In his second assignment of error, appellant disputes the trial court's determination that the Angola Road property and the Shaftsbury Lane Apartments were marital property.
"In dividing property in divorce proceedings, the trial court is required to classify assets as marital or nonmarital and then award each spouse his or her separate, non-marital property." Peck v. Peck (1994),96 Ohio App.3d 731, 734; R.C. 3105.171(B).[1] When classifying property as marital or separate, the trial court has broad discretion and its findings will not be reversed on appeal unless the court abused its discretion. Id. An abuse of discretion connotes a judgment that is unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217, 219.
The Angola Road property was purchased in October 1991 for $43,000. A $34,400 mortgage was taken in both parties' names. The mortgage was paid off on July 1, 1994. A second mortgage on the home, for $50,000, was taken in January 1997, and was still owed in full at the time of the hearing.
In December 1997, appellee waived her dower rights to the property. A new joint survivorship tenancy deed transferred title to appellant and Basem Shehadeh Suliman, his brother.
Appellant testified that the $14,000 down payment for the house came from his brother and employment earnings. He further stated that, over the next three years, he borrowed enough money from his brother to pay off the mortgage. According to appellant, that is why, in 1997, he gave his brother a joint interest in the house.
Appellee testified that $4,000 of the down payment came from her jewelry which appellant sold. She further stated that appellant had saved the remainder of the down payment from his employment income. Appellee indicated that when appellant paid off the mortgage he was very happy and "bragging" to everyone. She had no knowledge of any loans from his brothers. As to her release of her dower rights, appellee testified that she did not want to sign the document but that appellant essentially forced her.
In determining that the marital residence was marital property, the trial court did not find appellant's testimony credible noting that he presented inconsistent testimony regarding the source of the down payment and the payment of the mortgage. Upon review of the relevant evidence, and mindful of the fact that the trial court is in the best position to judge the credibility of witnesses, we cannot say that the trial court abused its discretion when it found that the Angola Road property was marital property.
Appellant next contends that the trial court erroneously classified the Shaftsbury Lane Apartments as marital property, that they were in fact owned by a partnership consisting of appellant, his brother and his friend. The sixteen unit complex, located at 5007 Hill Avenue, Toledo, Ohio, was purchased on June 3, 1998 for $264,000. Appellant is the titled owner.
Appellee testified that she was present at the closing and that one of appellant's brothers was also present but she did not see him sign any documents. She further maintains that the down payment for the apartments was derived from a $50,000 home equity loan, procured on January 4, 1997, on their Angola Road residence.
Appellant testified that only his name appears on the Shaftsbury deed because his other partners could not secure credit. Appellant further stated that the $50,000 home equity loan was used as a portion of the $64,800.34 down payment for the apartments.
Appellant indicated that he was to own a twenty-five percent interest in the apartments, his brother, Niem, would also get twenty-five percent and friend, Hani Al Shurafa, would have a fifty percent interest. There was no written document evidencing such agreement.
Terry Schaick, the seller of the Shaftsbury Apartments, testified regarding the alleged partnership. He stated that prior to the actual sale, he was introduced to individuals who could have been partners but the relationship was uncertain. He indicated that at closing and thereafter he felt that Hani was a partner because he lived at and managed the complex.
As with the testimony regarding the nature of the Angola property, the trial court found appellee's testimony more credible than appellant's and determined that the apartments were marital property. Again, upon review of the relevant portions of the record, and mindful of the trial court's superior ability to assess the credibility of witnesses, we cannot say that the trial court abused its discretion in finding the apartments to be marital property. Appellant's second assignment of error is not well-taken.
In his third assignment of error, appellant disputes the trial court's valuation of the Angola Road property and the Shaftsbury Lane Apartments.
At trial, appellant testified that the Angola Road property was worth $44,000, $1,000 over the purchase price. He stated that the actual house is worth nothing; the value he placed was on the land alone. Once questioned regarding the fact that he obtained a home equity loan in the amount of $50,000, he conceded that the property was worth $50,000. Appellant did state that he replaced and refurbished much of the interior and that he added a bathroom. Appellant testified that when the parties went to Jordan in 1998, the pipes froze and damaged the property. He stated that expenses were incurred for the repairs, much of which he did himself.
Appellee valued the property at $75,000. She testified that in October 1998, two men came to the house and offered to purchase it for $75,000. The offer was verbal.
The trial court agreed with appellee and found that the property had a fair market value of $75,000. The court based its finding, in part, on the fact that a lending institution gave appellant a $50,000 mortgage which the court found unlikely if the house had only been worth $50,000. The fact that the trial court simply chose to disbelieve appellant, without more, does not warrant this court overturning a finding.
Appellant further disputes the trial court's $264,000 valuation of the Shaftsbury Apartments. The court based its valuation on the testimony of Terry Schaick, the former property owner, who had a written agreement with appellant to buy back the property for the purchase price. Appellant also testified that the value of the apartments is $264,000. Based on the above, we find that the trial court did not abuse its discretion in valuing the apartments.
As to the Shaftsbury Apartments, appellant contends that the trial court wrongly found that appellant owed $180,000 on the mortgage when in fact he owed $188,000. Appellant offered no documentary evidence in support of his testimony.
Terry Schaick testified that he believed that appellant owed approximately $183,000 on the mortgage but the amount was going down because payments were being made.
Based on the foregoing we find that the trial court did not abuse its discretion in valuing the Angola residence and Shaftsbury Apartments. Appellant's third assignment of error is not well-taken.
In his fourth assignment of error, appellant argues that the trial court erred when it found that appellee's student loan and chiropractor bills were martial property subject to division.
Addressing the student loan debt first, we recognize that the debt may properly be allocated to the party who incurs the debt and receives the benefit. Webb v. Webb (Nov. 30, 1998), Butler App. No. CA97-09-167, unreported.
Appellant testified at trial that he had no knowledge of appellee's student loans until shortly before the divorce. He stated that when appellee asked if she could attend college he gave his consent but instructed her not to take out the loans.
Appellee testified at the date of the trial she owed approximately $20,000 in student loans. Appellee testified that appellant told her she could get a student loan because it was interest free and that she gave part of the loan to him.
The trial court, in dividing the loan debt equally, noted that appellant agreed to appellee's request to attend college but then refused to help pay her expenses. The court also observed that appellant advanced professionally during the marriage and received proceeds from appellee's loans. On review of the relevant portions of the record we cannot say that the trial court abused its discretion when it equally divided the student loan debt.
During the marriage, appellee was involved in an automobile accident and received a $10,400 settlement from the tortfeasor. As a result of injuries caused by the accident, appellee also has an outstanding balance of $4,800 in chiropractor bills.
Appellee testified that appellant took the settlement proceeds and told her and the attorney representing the chiropractor's office that the bill would be paid. Appellant, conversely, stated that appellee spent the settlement proceeds on a trip to Egypt and on family.
In finding that appellant be solely responsible for the bill, the court noted that appellee's testimony regarding the bill was unrefuted by appellant. We cannot say that the trial court abused its discretion in so finding.
Appellant's fourth assignment of error is not well-taken.
 SPOUSAL SUPPORT
Appellant argues, in his fifth assignment of error, that the trial court erroneously failed to impute income to appellee when considering a spousal support award. In his sixth assignment of error, appellant disputes the actual award of spousal support. Because the assignments of error are related we shall discuss them together.
In determining the appropriateness of spousal support, R.C. 3105.18(C)(1) sets forth the following fourteen factors which the trial court must consider before making a spousal support award:
 "(a) The income of the parties, from all sources, including, but not limited to, income derived from property divided, disbursed, or distributed under section 3105.171 [3105.17.1] of the Revised Code;
"(b) The relative earning abilities of the parties;
 "(c) The ages and the physical, mental, and emotional conditions of the parties;
"(d) The retirement benefits of the parties;
"(e) The duration of the marriage;
 "(f) The extent to which it would be inappropriate for a party, because that party will be custodian of a minor child of the marriage, to seek employment outside the home;
 "(g) The standard of living of the parties established during the marriage;
"(h) The relative extent of education of the parties;
 "(i) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties;
 "(j) The contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party;
 "(k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought;
 "(l) The tax consequences, for each party, of an award of spousal support;
 "(m) The lost income production capacity of either party that resulted from that party's marital responsibilities;
 "(n) Any other factor that the court expressly finds to be relevant and equitable."
It is well-established that the trial court enjoys wide latitude in determining the appropriateness as well as the amount of spousal support. Bolinger v. Bolinger (1990), 49 Ohio St.3d 120, 122. Such an award will not be reversed unless a reviewing court after considering the totality of the circumstances, finds that the trial court abused its discretion. Kunkle v. Kunkle (1990), 51 Ohio St.3d 64, 67; Cherry v.Cherry (1981), 66 Ohio St.2d 348, 355.
In determining whether or not to award spousal support, a trial court must consider all the relevant factors under R.C. 3105.18 and then weigh the need for support against the ability to pay. Layne v. Layne (1992),83 Ohio App.3d 559, 562-563. The resulting award must be "fair, equitable, and in accordance with law." Kaechele v. Kaechele (1988),35 Ohio St.3d 93, 94. An equitable result requires that "[t]o the extent feasible, each party should enjoy, after termination of a marriage, a standard of living comparable to that established during the marriage as adjusted by the various factors of [R.C. 3105.18]." Buckles v. Buckles
(1988), 46 Ohio App.3d 102, 110.
In the instant case, the trial court specifically addressed all relevant factors in R.C. 3105.18(C)(1). Addressing said factors, the trial court found that at the time of trial appellant was forty years old and in fair health and appellee was thirty-four years old and in good health. The parties had been married for eight years and lived frugally. Appellee had received an associate's degree in cartography and was a full time student at The University of Toledo pursuing a bachelor's degree in geography. Appellant was enrolled in the College of Engineering's doctorate program. Appellant refused to assist appellee in paying her tuition so she secured student loans.
The trial court acknowledged that appellant is a participant in PERS and that the marital portion of the benefits is $37,494. The court noted that the each party had been awarded $64,172 in property and/or cash settlement and that the student loans were to be divided by the parties. (The trial court previously determined that the chiropractor bill was to be paid by appellant.)
Appellant specifically disputes the trial court's findings as to the earning abilities of the parties. Appellant submits that had appellee obtained part-time employment earning $7 per hour she would have been able to support herself without assistance from appellant.
The trial court found that in Jordan, appellee worked for three years as a cartographer earning approximately $170 per month. Appellee stated that with her bachelor's degree she anticipated earning $20,000 annually. The court, finding appellee's testimony to be credible, determined that during the course of the marriage appellant would not allow appellee to work. Rather, he informed her that it was her duty to care for the home. The court then concluded that appellee lost income as a result of her marital responsibilities.
The court found that appellant had the ability to pay spousal support and all reasonable monthly expenses. The court then awarded appellee spousal support in the amount of $900 per month for six months and then $500 per month for an additional six months. The court noted that the "`step-down'" procedure would allow appellee time to finish her college education and obtain employment.
Upon review of the record we do note, as appellant contends, there appears to be a temporary deficit when subtracting his income from his expenses, including spousal support. However, once the Shaftsbury Apartments are sold, appellant will not have a substantial mortgage payment. Further, the support ordered is of a short duration and tax deductible.
Based on the foregoing, we cannot say that the trial court abused its discretion when it failed to impute income to appellee or when it made the spousal support award. Accordingly, appellant's fifth and sixth assignments of error are not well-taken.
 ATTORNEY FEES
In appellant's seventh and final assignment of error, he argues that the trial court erred by ordering him to pay $15,000 of appellee's attorney fees. A decision to award or not to award attorney fees should not be interfered with absent a clear showing of abuse or prejudice by the trial court. Birath v. Birath (1988), 53 Ohio App.3d 31, 39.
R.C. 3105.18(H) permits an award of attorney fees if the court:
 "determines that the other party has the ability to pay the attorney fees that the court awards. When the court determines whether to award reasonable attorney fees to any party pursuant to this division, it shall determine whether either party will be prevented from fully litigating that party's rights and adequately protecting that party's interests if it does not award reasonable attorney fees."
For the same reasons as discussed in appellant's fifth and sixth assignments of error, we conclude that the trial court's award of attorney fees was proper and reasonable. The facts and circumstances of this case support a finding that appellee would be prevented from fully litigating her rights and protecting her interests without such an award. Appellee, without objection, submitted at trial an itemized billing statement in support of her claim for attorney fees. The statement shows that appellee had a balance of $16,900.30; appellee was awarded $15,000 of that amount. Based on our review of the relevant portions of the record, we cannot say that the trial court abused its discretion when it ordered appellant to pay a large portion of appellee's attorney fees. Appellant's seventh assignment of error is not well-taken.
On consideration whereof, we find that substantial justice was done the party complaining, and the decision of the Lucas County Court of Common Pleas, Domestic Relations Division, is affirmed. Costs of this appeal are assessed to appellant.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
James R. Sherck, J., Richard W. Knepper, J., and Mark L. Pietrykowski,P.J., CONCUR.
[1] R.C. 3105.171(A)(3)(a) defines "marital property" as follows:
 "(i) All real and personal property that currently is owned by either or both of the spouses, including, but not limited to, the retirement benefits of the spouses, and that was acquired by either or both of the spouses during the marriage;
 "(ii) All interest that either or both of the spouses currently has in any real or personal property, including, but not limited to, the retirement benefits of the spouses, and that was acquired by either or both of the spouses during the marriage;
 "(iii) Except as otherwise provided in this section, all income and appreciation on separate property, due to the labor, monetary, or in-kind contribution of either or both of the spouses that occurred during the marriage;
"* * *.
"Separate property" as defined in R.C. 3105.171 (A)(6)(a) "means all real and personal property and any interest in real or personal property that is * * * acquired by one spouse prior to the date of the marriage" and "passive income and appreciation acquired from separate property by one spouse during the marriage."