**Sara Gideon HILL, Plaintiff,**

**v.**

**Anna Mary HILL, Thomas Wallace Hill, Ruth M. Huhn, Defendants.**

Court of Chancery of Delaware, New Castle.

Feb. 13, 1970.

William J. Wier, Jr., of Connolly, Bove & Lodge, and Jacob Kreshtool, Wilmington, for plaintiff.

David B. Coxe, Jr., of Tunnell & Raysor, Georgetown, for defendants.

DUFFY, Chancellor.

The action is one to enforce a pre-nuptial agreement which a surviving wife says she honored and her husband did not before he died.

### A.

Plaintiff is Sara Gideon Hill, widow of Harry Murdock Hill. Defendants are the residuary legatees and devisees under Mr. Hill's will and the beneficiary of insurance policies on his life: his mother, Anna Mary Hill, his sister, Ruth M. Huhn, and his brother, Thomas Wallace Hill. All defendants have moved to dismiss the complaint on the ground that it fails to state a claim upon which relief can be granted.

Plaintiff alleges that she and Mr. Hill signed a contract on December 30, 1965 in Salisbury, Maryland, where they were married on the following day. He died domiciled in Delaware on October 20, 1967. The agreement was recorded in the Office of the Recorder of Deeds for Sussex County, Delaware, on March 12, 1968.

The agreement recites that the parties respectively own certain property: Mr. Hill owns real property in Seaford, Delaware, stocks, securities and insurance policies upon his life; his intended wife owns two properties in the Borough of Gettysburg, Pennsylvania, one alone and another with her son as joint tenants with right of survivorship. The dispositive parts of the agreement state:

"1. The intended husband will within thirty days after the marriage by proper deed convey all of his real property to him and the intended wife as tenants by the entireties.

"2. The intended wife will within thirty days after the marriage takes place by proper deed convey her real estate situated on the South side of Springs Avenue in the Borough of Gettysburg, Pennsylvania, to her and the intended husband as tenants by entireties.

"3. The intended husband will within thirty days after the marriage takes place transfer all of his stocks and securities, other than United States Savings Bonds, to him and the intended wife as joint tenants with right of survivorship.

"4. The intended husband will, within thirty days after the marriage takes place have the intended wife named primary beneficiary on all life insurance policies owned by him at the time of the execution of this agreement insuring his life and agrees not to thereafter change the primary beneficiary on such policies during the lifetime of the intended wife. * * *"

"5. The intended wife agrees that if her said son, William Gideon, dies without issue during her lifetime, and if the aforesaid property situated on the West side of Baltimore Street in Gettysburg, Pennsylvania, then becomes vested in her by right of survivorship, she will within thirty days after the death of her said son by proper deed convey such real estate to her and the intended husband as tenants by entireties."

Mr. Hill's probated will directs that his residuary estate, which includes real property at Hearn's Pond (near Seaford), Delaware, be divided into equal parts and dis-

tributed to the three defendants.[1] He named his mother as the beneficiary of life insurance.

Plaintiff alleges that she performed all of the obligations required of her under the agreement and that she remained Mr. Hill's wife until his death. She says that Mr. Hill performed several of his obligations but he failed, through oversight, to: (a) execute a deed transferring the Hearn's Pond property to himself and plaintiff as tenants by the entireties, and (b) make plaintiff a beneficiary of all his life insurance.

Mrs. Hill says that she is the equitable owner of the Hearn's Pond property and she claims the proceeds of the insurance. She thus seeks an order requiring defendants to hold their respective interests in those properties in trust for her.

### B.

The legal issue on which the parties are at odds is narrow and, as in so many disputes, the result turns, not on which side offers "better" law, but which of equally sound principles is applicable. The inquiry begins with a contract, which is the foundation of plaintiff's claim. That contract, say defendants, if it is enforced here, would affect title to Delaware real estate. For that reason, defendants argue, Delaware law governs and under our law the agreement is a nullity because it does not conform technically to 13 Del.C. § 301, which provides:

> "A man and woman in contemplation of matrimony, by a marriage contract executed in the presence of two witnesses at least ten days before the solemnization of the marriage, may determine what rights each shall have in the other's estate during marriage and after its dissolution by death, and may bar each other of all rights in their respective estates not so secured to them, and any such contract duly acknowledged before

any officer authorized to take acknowledgments may be recorded in the deed records in the office of the Recorder in any and all counties of the State."

Are the requirements of this statute applicable to the pre-nuptial agreement made in Maryland and relating to real property in Delaware and Pennsylvania? That is the issue forced by defendants' motion to dismiss and it is crucial because plaintiff tacitly concedes that the agreement was not executed in the presence of two witnesses at least ten days before the date of marriage, and it was not duly acknowledged before an officer authorized to take acknowledgments.

■ It is well established that the law of the situs of real property determines the effect of actions involving its ownership. Security Trust Co. v. Hanby, 32 Del.Ch. 70, 79 A.2d 807 (1951). Cf. Dick v. Reves, 42 Del.Ch. 187, 206 A.2d 671 (1965).

■ But the agreement between the Hills can hardly be characterized as a title document or as a document designed to in some way directly affect title to Delaware real estate. It is certainly true that the agreement concerns real estate and that it commits the parties to do something about real estate in two different states. And that points up its true nature, which is this: in contemplation of marriage the Hills promised each other to take certain specified acts as to stock, securities, life insurance—and real estate. That is what the contract said, that is what the parties expected it to accomplish. I therefore find applicable the principles stated in 16 Am.Jur.2d, Conflict of Laws § 15:

> "It has been broadly stated that contracts or executory contracts relating to real property are governed by the law of the jurisdiction or place where the property is located. However, a distinction is made between contracts directly affecting title to real property, which are to

1. Mr. Hill's will is dated August 8, 1967 and, apparently, the property at Hearn's Pond was the only real estate he owned.

be so construed according to the law of the state where the property is situated, and contracts which while relating to real property, do not directly affect the title to or an interest in the property itself but are purely personal. Agreements of the latter nature are governed by the usual rules of contracts, and will not be influenced by the lex rei sitae."

The same distinction is made by the Restatement, Conflicts of Laws § 340, which provides:

> "The law of the place of contracting determines the validity of a promise to transfer or to convey land."

And see the comments thereto.

 Neither the purpose nor the effect of the agreement was to act as an instrument of conveyance. It was simply an agreement whereby two people prior to marriage decided to fix their respective interests in real property, securities and life insurance proceeds. In short, the agreement was a "personal contract" as opposed to one directly affecting real property and under Delaware choice of law rules, the law of the place of making the contract determines whether or not it is enforceable. Itek Corporation v. Chicago Aerial Industries, Inc., Del., 248 A.2d 625 (1968); Pauley Petroleum Inc. v. Continental Oil Co., Del.Ch., 231 A.2d 450 (1967), aff'd

Del., 239 A.2d 629 (1968); United Aircraft Corporation v. Paul Hardeman, Inc., Del., 204 A.2d 396 (1964). See also: Wilmington Trust Company v. Pennsylvania Company, 40 Del.Ch. 1, 172 A.2d 63 (1961). Since the agreement was made in Maryland, the law of that State governs its validity.[2]

Defendants rely heavily on In re Bulova's Will, 14 A.D.2d 249, 220 N.Y.S.2d 541 (1961), which follows the "grouping of contacts" principal in making a choice of law selection. In this case, at least, that approach would be inconsistent with our established law and I do not feel free to apply it.[3]

The Maryland Court of Appeals has recently reviewed the law as to pre-nuptial agreements and in Hartz v. Hartz, 248 Md. 47, 234 A.2d 865 (1967) Chief Judge Hammond wrote:

> "The law on the point in Maryland is clear and well established. The validity, propriety and, indeed, favor in the eyes of the law of antenuptial agreements settling or barring property rights of the parties is recognized."

 Defendants not having shown any reason why the agreement is invalid under Maryland law, it follows that their motion to dismiss the complaint must be denied.

---

2. It should also be said that I am unaware of any Delaware policy which precludes recognition or enforcement of the agreement. 13 Del.C. § 301 is permissive in language and does not purport, by its terms, to state the only cognizable procedure for creating a valid pre-nuptial agreement. The law of the State where it was made attaches obligations to what the Hills did, and Delaware public policy does not prohibit enforcement of those obligations here.

3. Compare Friday v. Smoot, Del., 211 A.2d 594 (1965).