159 N.J. Super. 566 (1978)
388 A.2d 1000
PARVEEN CHAUDRY, PLAINTIFF-RESPONDENT AND CROSS-APPELLANT,
v.
M. HANIF CHAUDRY, M.D., DEFENDANT-APPELLANT AND CROSS-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued February 22, 1978.
Reargued May 9, 1978.
Decided June 5, 1978.
*569 Before Judges LYNCH, KOLE and PETRELLA.
Mr. John Kuhn Bleimaier argued the cause for defendant-appellant and cross-respondent.
Mr. Bruce Lubitz argued the cause for plaintiff-respondent and cross-appellant (Messrs. Warren, Goldberg & Berman, attorneys).
The opinion of the court was delivered by KOLE, J.A.D.
Plaintiff wife and defendant husband are citizens of Pakistan. The wife and the children of the marriage reside in Pakistan. The husband practices medicine as a psychiatrist in this State, and resides here.
The wife filed an "amended complaint" alleging (1) a subsisting marriage, unjustifiable abandonment by the husband in May 1972 and his refusal adequately to support her and the children, then aged 13, 10 and 1, and seeking separate maintenance, as well as support of the children, and that (2) if the court were to find that defendant was lawfully divorced from her, she should receive alimony and equitable distribution and the children should receive adequate support. The defenses essentially were as follows: (1) the husband already had obtained a valid divorce in accordance with the laws of Pakistan; (2) the Pakistan court had confirmed the divorce, had full jurisdiction to deal with all of the issues, including support, raised in this proceeding and its actions were "dispositive of the matters raised" in the complaint; (3) the husband had met all financial obligations to the wife in accordance with the antenuptial agreement between them and the laws of Pakistan, "the country with jurisdiction over the *570 parties, the marriage and divorce;" (4) the proper forum for the resolution of the financial needs of the wife is the Pakistan court, "which already has jurisdiction over the parties and the subject matter, and in which there is currently an action pending * * * brought by plaintiff [wife] against defendant [husband];" and (5) the court was without jurisdiction to grant equitable distribution.
The trial judge, in a judgment entered August 12, 1976, under principles of comity refused to recognize the Pakistan divorce and awarded the wife separate maintenance in the sum of $430 a month. Relying on Shikoh v. Murff, 257 F.2d 306 (2 Cir.1958), he held that the husband's method of obtaining the divorce in the Pakistan consulate in New York, while he resided in New Jersey, rendered it invalid under the laws of New Jersey. Although it is not too clear, apparently the judge also was of the view that Pakistan law, pursuant to which a divorced wife is not entitled to alimony, and the antenuptial agreement, under which the wife's sole property or other financial right was to receive 15,000 rupees ($1,500) from the husband, were so offensive to this State's public policy as to invalidate the divorce and to entitle her to separate maintenance, where, as here, the husband was found to have abandoned her. N.J.S.A. 2A:34-24.
In support of his separate maintenance award, the judge found that the husband was "domiciled in New Jersey" since he "is a resident here * * * has practiced medicine here" in excess of nine years, has a medical license and owns real estate and other property here, and "in every other respect demonstrates an intention not to return to Pakistan but to remain here to enjoy the pleasures" of these assets and "the protection and benefits of our laws and sovereignty." He further found that
The only purposes for which he [the husband] returns to Pakistan * * * are connected with his plan and intention that the plaintiff and his children shall remain in Pakistan, subject there to the lesser benefits and rights and share of his earnings and property which he enforces against them by the judgment he can secure from *571 the Pakistani courts. He has * * * taken affirmative action to prevent the plaintiff [wife] from coming to reside in this Country, and I feel that in addition to the grounds which I have already detailed that there is an essential injustice in the defendant accepting all the benefits of living in New Jersey and earning a substantial income here while requiring his wife and family to live in Pakistan and be circumscribed by their law which is far less beneficial to them than the American law would be if they were to reside with the husband and father here.
Now, with respect to the application of the * * * [antenuptial] agreement which was in fact entered into between the parties in this case, * * * this is contrary to the public policy of the State of New Jersey. While the State does recognize [such] agreements, it is essentially because there is a freedom of choice between the parties, and if they with full knowledge of their rights and with proper guidance and counselling come to a certain determination to waive or give up rights this certainly may be enforced in the proper case in this State; but, where as here there was no choice given to the plaintiff under the law of Pakistan and the Islamic law, which I do not criticize * * * she had no choice. She had to waive, give up or not claim support or alimony in the event of a divorce, and it cannot be said that with that choice she chose to do it, because there was no choice involved. To that extent it is so clearly contrary to the public policy of this State that I decline to enforce it, and, therefore, I find that it is open to her to prove by proper evidence that she would be entitled to certain support by way of separate maintenance.
Although the judgment awarded separate maintenance to the wife, it denied support for the three children, predicated on the court's asserted lack of authority over support for children beyond its jurisdiction. Indeed, the trial judge refused to take proofs on that issue.
The husband appeals from the separate maintenance award. The wife cross-appeals from the judgment to the extent that it denies support for the children.[1]
We consider first the separate maintenance award.
We hold that (1) the trial judge erred in refusing to recognize the Pakistan divorce as valid under principles *572 of comity and, accordingly, he should not have awarded the wife separate maintenance; and (2) the wife was not entitled to equitable distribution or alimony under the proofs presented below.
In 1958, by negotiation between their parents, a marriage contract between the husband and wife was entered into. They were then, and when they were married in 1961 some three years later, citizens of Pakistan. The marriage contract is called a nikahname. It will hereafter be referred to as the antenuptial agreement.
Expert testimony on Pakistan law relating to marriage and divorce was supplied by the husband's witness, Kurshid Anwar Sheikh, an advocate or attorney in Pakistan. He had represented the husband in connection with his marital disputes, including the wife's appeal from the confirmation of the divorce by the lower court in Pakistan and the pending actions by the husband for custody and for an injunction against the wife from proceeding in any action anywhere to endeavor to obtain support or alimony.[2]
It is clear from the proofs that the antenuptial agreement provided that the wife, at any time during or after the marriage, on demand could obtain from her husband 15,000 rupees, about $1,500. Although such agreement could have provided that she have additional rights in her husband's property, this one contained no such provision. Under Pakistan law she was not entitled to alimony or support upon a divorce. A provision in the agreement to the contrary would be void as a matter of law.
After the parties were married in 1961 they lived in Pakistan until the husband left for England in May or June 1962. The wife remained behind with their first child and her parents. She was able to join her husband in England when *573 her parents paid for the plane tickets for her and the child. The family stayed in England for about seven months before coming to the United States.
From December 1963 to December 1966 the parties and their two daughters lived in Connecticut. The second child had been born in Connecticut in 1964. In December 1966 the family moved to New Jersey where defendant obtained a job with the Trenton Psychiatric Hospital. In December 1968 the wife and two children returned to Pakistan, with the permanent intention, according to the husband, to remain there. But the wife claimed that he had informed her that he would return permanently to Pakistan to join them once he had completed his state medical examination, since his visa was then expiring. It was not until October 1970 that the husband returned to Pakistan, according to him, for the purpose of finding a position and remaining there. He stayed with his wife and children until February 1971, when the Trenton Psychiatric Hospital sent him papers permitting him to enter the United States. Although the husband claimed that his wife would not accompany him back to this country, she testified that he agreed to arrange for her and the children to join him at the New Jersey hospital once he was able to obtain the necessary immigration visa for this purpose. There is a conflict in the proofs as to his good faith efforts in endeavoring to have his wife and children return to New Jersey after his arrival here in February 1971. He returned to Pakistan in April 1972 for about four weeks, during which time he lived with his wife. He then returned to New Jersey without his family. The parties' third child was born in Pakistan in January 1973. He remained away from Pakistan from May 1972 until December 29, 1975. Meanwhile, he had instituted and had obtained a Pakistan divorce, as hereafter set forth.
The trial judge plainly believed the wife's testimony as to her reason for leaving New Jersey in December 1968 to go to Pakistan and for not returning thereafter to this State to join her husband. There is sufficient credible evidence to *574 support the judge's findings that she intended to live with her husband, either here or in Pakistan, wherever he wanted her; but that the husband planned and intended, since 1968, that she and the children remain in Pakistan and, in fact, had taken affirmative action to prevent her from coming to live here. We accept those findings, Rova Farms Resort v. Investors Ins. Co., 65 N.J. 474, 483-484 (1974), but, as hereinafter indicated, we hold that they do not suffice to justify an award of alimony or equitable distribution to the wife.
We now proceed to the facts surrounding the husband's obtaining of the Pakistan divorce.
On December 16, 1973 the husband dispatched a letter from Trenton to his wife in Pakistan, stating that he had filed divorce papers with the Pakistan consulate in New York City. We note that the Pakistan appellate court found that the wife had received this letter. The husband also sent her a copy of the divorce pronouncement or deed (talaq) after it was effected at the Pakistan consulate. The divorce was confirmed by the Pakistan lower court on November 5, 1974. The wife then petitioned the appellate court, contending that for various reasons the divorce was invalid. The validity of the divorce was upheld, after a hearing by the Pakistan appellate court, in a written opinion dated December 30, 1975. The wife was represented by counsel in both Pakistan courts. The time for appeal to the highest court of Pakistan has apparently run. Accordingly, the judgment of the appellate court validating the divorce is final. We note that the document executed by the husband and which resulted in the divorce stated as the reason for divorce, "incompatibility on account of emotional problems of the [wife] * * *."
Prior to the confirmation of the divorce by the Pakistan lower court the wife, on May 1, 1974, instituted a separate maintenance action in New Jersey. That was dismissed for failure to answer interrogatories. The present action was commenced March 4, 1975.
*575 The trial judge's reliance on Shikoh v. Murff, supra, 257 F.2d 306 was misplaced. Unlike the facts in that case, here there was more than the mere declaration of divorce  talaq  before the Pakistan consulate in New York City. The divorce was actually confirmed by a court in Pakistan after being contested by the wife; and thereafter, after an appeal by the wife in a further contested proceeding, the Pakistan appellate court held the divorce to be valid. Under these circumstances, principles of comity require that the divorce be recognized here. Thus the status of the parties as being divorced should have been acknowledged by the trial judge.
Both parties were citizens of Pakistan during the entire period of the Pakistan divorce proceedings and the hearing in the court below. The expert testimony is to the effect that such citizenship constitutes a sufficient basis for the divorce judgment in Pakistan, at least where the matter, as here, was contested. For the purposes of validity of the divorce, it is immaterial that the husband was residing here or, as appears to have been found by the court below, was "domiciled" here. Pakistan had jurisdiction to enter a divorce that should be recognized here by reason of (1) the Pakistan citizenship of the parties, (2) the wife's residence there, even though it may have been against her will and by reason of the husband's acts, and (3) the judgment of the appellate court in Pakistan which validated the divorce. Irrespective of the manner in which the divorce action was instituted and the legal effect of the divorce document at the time it was filed in the New York consulate or thereafter when it was acted upon in Pakistan, the final result was a divorce judgment entered after contested proceedings in Pakistan in which the parties appeared through counsel. We see no reason for holding that this foreign judgment adjudicating the status of the parties as divorced offends the public policy of this State. The reason for the divorce  the incompatibility of the parties by reason of the wife's emotional problems and the *576 failure to effect a reconciliation  is not such a departure from grounds for divorce in this State as to justify nonrecognition on public policy grounds. See N.J.S.A. 2A:34-2(d).
An analysis of the opinion of the appellate court in Pakistan satisfies us that the validity of the divorce was amply litigated and determined there in that country. The Pakistan judgment should have been recognized and enforced to the extent it affects the marital status of the parties. The need for predictability and stability in status relationships requires no less. See Borys v. Borys, 76 N.J. 103, 386 A.2d 366 (1978); Fantony v. Fantony, 21 N.J. 525 (1956); Warrender v. Warrender, 79 N.J. Super. 114 (App. Div. 1963), aff'd o.b. 42 N.J. 287 (1964); Zanzonico v. Neeld, 17 N.J. 490 (1955); Restatement, Conflict of Laws 2d, § 98; Peterson, "Foreign Country Judgments and the Second Restatement of Conflict of Laws," 72 Col. L. Rev. 220, 243, 244 (1972). See also, Kram v. Kram, 52 N.J. 545, 548 (1968); Meeker v. Meeker, 52 N.J. 59, 68-70 (1968) Mrowczynski v. Mrowczynski, 142 N.J. Super. 312 (App. Div. 1976); Sherif v. Sherif, 76 Misc.2d 905, 352 N.Y.S.2d 781 (Fam. Ct. 1974).
Thus, the parties were no longer married when the trial judge entered the judgment for separate maintenance.
The question remains as to whether the judge should nevertheless have entertained, under the second count of the amended complaint, the wife's claims for alimony and equitable distribution.
The issues of alimony and the wife's property rights were not adjudicated by the Pakistan courts. The expert testimony establishes that alimony does not exist under Pakistan law and an antenuptial agreement providing therefor is void as a matter of law in that country. It also makes it clear that the antenuptial agreement could have provided for the wife's having an interest in her husband's property, but *577 no such provision was made; instead, it provided only for her receiving 15,000 rupees.
For the purpose of this opinion, we assume, without deciding, that where there is a sufficiently strong nexus between the marriage and this State  e.g., where the parties have lived here for a substantial period of time  a claim for alimony and equitable distribution may properly be considered, in the court's discretion, after a judgment of divorce elsewhere, under N.J.S.A. 2A:34-23, even though such relief could not have been obtained in the state or country granting the divorce. See Healey v. Healey, 152 N.J. Super. 44 (App. Div. 1977); Pierrakos v. Pierrakos, 148 N.J. Super. 574 (App. Div. 1977). See also, Woliner v. Woliner, 132 N.J. Super. 216 (App. Div. 1975), aff'd o.b. 68 N.J. 324 (1975).[3]
Nevertheless, we are satisfied that the proofs here do not support a conclusion that there was an adequate nexus of the marriage to this State to justify an award to the wife of alimony or equitable distribution under N.J.S.A. 2A:34-23. Such a relationship to New Jersey is not established merely because the wife and children resided here from 1966 to 1968, even though, as the trial judge found, it was the husband's conduct that prevented the wife from returning to this State after 1968. Under these circumstances the denial of alimony or equitable distribution to the wife cannot be said to offend our public policy.
Additionally, we have concluded that the wife is not entitled to equitable distribution by reason of the antenuptial *578 agreement, which was negotiated on her behalf by her parents. It could have lawfully provided for giving her an interest in her husband's property, but it contained no such provision. It limited her rights to some $1,500, or 15,000 rupees. There is no proof that the agreement was not fair and reasonable at the time it was made. We also note that there was no antenuptial or similar agreement in Pierrakos, supra.
We see no reason of public policy that would justify refusing to interpret and enforce the agreement in accordance with the law of Pakistan, where it was freely negotiated and the marriage took place. See N.J. Title Guar. & Trust Co. v. Parker, 85 N.J. Eq. 557 (E. & A. 1915); Stein-Sapir v. Stein-Sapir, 52 A.D.2d 115, 382 N.Y.S.2d 799 (App. Div. 1976); Fernandez v. Fernandez, 194 Cal. App.2d 782, 15 Cal. Rptr. 374 (D. Ct. App. 1961); Hill v. Hill, 262 A.2d 661 (Del. Ch. 1970), aff'd 269 A.2d 212 (Del. Sup. Ct. 1970). See also, In re Alexandravicus, 83 N.J. Super. 303 (App. Div. 1964), certif. den. 43 N.J. 128 (1964); 10 N.J. Practice Marriage, Divorce and Separation, § 275. Cf. Smith v. Smith, 72 N.J. 350 (1977); Carlsen v. Carlsen, 72 N.J. 363 (1977); Ganther v. Ganther, 153 N.J. Super. 226, 229 (App. Div. 1977); Caruso v. Caruso, supra.
We next consider the denial of child support.
We hold that the court erred in refusing to consider evidence with respect to that issue. It had jurisdiction to award such support, if justified by the proofs, even after a valid foreign divorce. See Daly v. Daly, 21 N.J. 599 (1956); Conwell v. Conwell, 3 N.J. 266, 273 (1949); N.J.S.A. 2A:34-23.
In his opinion the trial judge also appears to have refused child support on the alternative ground of affording comity recognition to an order of the Pakistan court awarding an aggregate of $150 a month for the three children, even though the record is barren of any indication of the nature of the proceedings in which the order was entered or the *579 basis therefor. In this respect it may be of some significance, among other things, to determine whether the Pakistan court was adequately aware of the financial status of the husband and the wife when its order was entered, and whether that court's order may be subject to modification in Pakistan.[4] See Daly v. Daly, supra, 21 N.J. at 605; Woodhouse v. Woodhouse, 17 N.J. 409, 416-418 (1955). See also, Grotsky v. Grotsky, 58 N.J. 354 (1971); Ionno v. Ionno, 148 N.J. Super. 259 (App. Div. 1977). Compare Yarborough v. Yarborough, 290 U.S. 202 and dissenting opinion at 213, 54 S.Ct. 181, 185, 78 L.Ed. 269, 276 (1933), referred to in Borys v. Borys, supra. In any event, we question whether, under the inadequate proofs disclosed by the record, there was any justification for the trial court's recognizing the Pakistan child support order on what appears simply to be some abstract notion of comity. See Caruso v. Caruso, supra, 106 N.J. Eq. at 138-144.
We note that in Hachez v. Hachez, 124 N.J. Eq. 442, 448 (E. & A. 1938), which dealt with the question of child custody in the context of comity among nations, the court referred to the importance of protecting children, but indicated that "`our courts will hold aloof when intervention is unnecessary for the welfare of the child.'" (emphasis supplied). See also, Fantony v. Fantony, supra; Salmon v. Salmon, 88 N.J. Super, 291, 303-305 (App. Div. 1965); Casteel v. Casteel, 45 N.J. Super. 338 (App. Div. 1957).
It may well be that since the three children reside in Pakistan, presumptively the $150 a month order entered by a Pakistan court (the Court of the First Family Judge and Senior Civil Judge at Karachi) for their support is adequate. Again, it may well be that if the husband will voluntarily submit himself to the jurisdiction of that court for further proceedings relating to the sufficiency of such support and *580 fully disclose to it his assets and income, an award of child support here may not be warranted. But the wife has the right to present proofs on these matters so that the trial court may be satisfied that the welfare of the children is being sufficiently protected by the Pakistan order against the husband who resides here. In short, the existence of the Pakistan order, if the wife wishes to contest its adequacy, could be the beginning, rather than the end, of the inquiry by the trial court.
It is not clear from the record whether the wife, in the trial court, was attacking the Pakistan order on the ground that it did not adequately provide for the children. There was merely a fleeting reference by the husband's attorney to the existence and the amount of the order; and, as indicated, the judge refused to take any proofs at all as to child support.[5]
Under these circumstances, we believe that the appropriate course is to affirm the judgment denying child support, without prejudice to the wife's filing a petition below in the cause, if she so desires, attacking the Pakistan order as to such support and seeking a hearing and a determination with respect thereto.
*581 In conclusion we hold that (1) the trial judge should have afforded recognition to the Pakistan divorce; (2) he should not have awarded separate maintenance or $6,880 arrears therefor to the wife; (3) the wife is not entitled to equitable distribution of assets or alimony; and (4) although the trial judge should not have denied support for the children for the reasons he gave, the judgment denying such support should be affirmed, without prejudice to the wife's filing a petition with respect to the Pakistan child support order, as heretofore discussed.
Paragraphs 1 and 2 of the judgment below are reversed. The provision of the judgment denying support for the children is affirmed, subject to the conditions set forth in this opinion. Neither party has argued the question of the $4,000 counsel fees, inclusive of costs, awarded the wife's attorney by the trial court. We see no basis for disturbing that award. See R. 4:42-9(a) (1). Thus, paragraph 3 of the judgment is affirmed. Paragraphs 5 and 6 of the judgment, requiring the husband to provide the wife with a return airline ticket to Pakistan and requiring his previous counsel to turn over exhibits to his present counsel, are affirmed.
The stay of the judgment, as herein modified, is vacated.
We do not retain jurisdiction.
NOTES
[1] The Supreme Court granted a stay of the judgment pending appeal, thus disposing of another basis of the wife's cross-appeal  the trial court's stay of the judgment in part.
[2] On June 6, 1976 the Pakistan court issued an ad interim restraint enjoining the wife from "styling herself as the wife of the applicant and prosecuting any judicial proceedings on that basis or arising in any manner out of that relationship."
[3] The instant case does not present the question of the extent to which generally a divorce judgment of a court of another country, which also has actually decided alimony or property rights, should be afforded recognition here under comity principles. Compare Manfrini v. Manfrini, 136 N.J. Super. 390 (App. Div. 1975), certif. den. 70 N.J. 526 (1976); Higginbotham v. Higginbotham, 92 N.J. Super. 18 (App. Div. 1966). See Caruso v. Caruso, 106 N.J. Eq. 130, 138 et seq. (E. & A. 1929); Growe v. Growe, 2 Mich. App. 25, 138 N.W. 2d 537, 540 (App. Ct. 1965).
[4] The husband claims that the wife has substantial assets and income. She denies this. The court below obviously believed her.
[5] The husband has a pending action in Pakistan seeking custody of the children. We note that prior to the last hearing of July 7, 1976 the parties, with the court's approval, settled all of the matters here involved in open court. Part of the settlement involved dismissal of the husband's custody action; recognition of the divorce as valid and the payment by the husband to the wife of $250 a month alimony, a reasonable rental for an apartment and the cost of furnishing the apartment; a waiver by each party of any interest in the other's property, and the payment by the husband of certain items of additional support for the children. The settlement occurred on April 1, 1976. It appears from the record that this settlement agreement was not effected by reason of subsequent advice received by the husband from his Pakistan attorney. The wife did not seek to enforce the agreement. See Skillman v. Skillman, 136 N.J. Super. 348, 353 (App. Div. 1975).